W. D. Moorehead, Ex., etc., *v.* C. A. Diemer *et al.*

W. D. MOOREHEAD, Executor, etc., *v.* C. A. DIEMER *et al.*

1. WILLS. *Insolvent proceedings. Duty of Executor. Practice.* The property, real or personal, of a non-resident decedent, situated or within the jurisdiction of this State at the time of his death, may be administered under our insolvent laws, and this although the estate of the decedent be solvent at the place of his domicile in another State.

Case cited: Gilchrist *v.* Cannon, 1 Cold., 581.

2. SAME. *Same. Sale of property for specific debts may be set aside by creditor. When.* The sale of property for the satisfaction of specific debts by the executor, during the first six months after letters of administration, with knowledge of the insolvency of the estate, does not preclude a creditor, standing by for two years, from filing his bill under the insolvent laws of this State for distribution. A creditor of the estate being the purchaser in this case, was allowed to retain the property at cost, or have the same sold for *pro rata* distribution, having paid the full value at time of sale.

---

FROM LINCOLN.

---

Appeal from the Chancery Court. JOHN P. STEELE, Chancellor.

BRIGHT & SON and EDWARD H. EAST for Moorehead.

LAMB & TILLMAN, E. COOPER and HOLMAN & HOLMAN for Diemer.

BURTON, Special J., delivered the opinion of the Court.

David F. Robertson died in the State of Mississippi, where he was then residing, in the year 1863,

having made a will, whereby he nominated his wife, Susan, his son James, and James B. Lamb, executrix and executors thereof. His wife and son qualified under the will, the other \ executor named, as we suppose, having renounced.

The testator owned a considerable estate in Mississippi, and also died the owner in fee of the tract of land in Lincoln County, Tenn., of 416 acres, the subject matter of this litigation.

By his will he made provision for his wife during her life, and then made a bequest of $5,000 to his name-sake, David Robertson Bonner. His son James is the residuary legatee and devisee of his whole estate.

By a codicil, executed some time after the date of his will, he directed that if it should become necessary to sell any of his property to pay debts, then, and in that case, the Lincoln county land already mentioned was to be sold for that purpose, and full power is given to his personal representatives to sell and make conveyance.

It further appears that the executrix and executor had the will of their testator recorded in Lincoln county, in pursuance of the provisions of the Code for the probate and recording of wills executed in other States. The testator, at the time of his death, owed debts to a large amount to citizens of Lincoln county, Tenn. To the defendant, Diemer, and other creditors made defendants with him, testator was indebted in the sum of $14,297 24.

The executrix and executor qualified and took out letters testamentary in Lincoln County also; and some short time thereafter sold and· conveyed the tract of land in Lincoln County to the defendant, Diemer, by deed absolute on its face.   There is no doubt, however, that this deed was made to satisfy the creditors whose debts as above recited amounted to the sum of $14,297.24, as that is the sum stated· as the consideration on the face of the deed, and in fact, it is substantially admitted in the pleadings that such was the nature of the transaction.   But at the time this deed was made the complainant, in right of his testator, held a note on the testator, David F. Robertson, for the sum of $2,385.98, dated January 11th, 1859, and due one day after date.   This note was credited by $1,000, as of October 18th, 1862, the balance with interest being unpaid.   For this debt no provision was made in the transaction with defendant Diemer, or otherwise, though the existence of the debt was well known to the personal representatives of Robertson when the deed was made. In ·fact, it appears from the answers in the cause that Moorehead was requested to become a party with the other creditors, and receive satisfaction of his debt in this way.   But he declined to do this, preferring, as is said, to look to the general estate for the satisfaction of the debt.   And this, perhaps, it was his duty to do, as the respondents admit that the land was only worth about $10,000,

whereas it was taken as above shown in satisfaction of more than $14,000 of indebtedness.

Under this state of facts the complainant, Moorehead, on the 16th of June, 1868, filed his bill in the Chancery Court of Lincoln County against the executrix and executor of Robertson, and against Diemer and the other creditors for whom he purchased the land.

The object of the bill is to have the deed to Diemer recalled, and to have the estate of David F. Robertson, situated in the State of Tennessee, administered as an insolvent estate, and the proceeds of the land distributed *pro rata* among the creditors, himself included. And the question made in the record is, whether the complainant is entitled to the relief sought by his bill. The Chancellor was of the opinion that he was, and so decreed, and the defendants have appealed to this Court.

We may remark in the first place, that there is no doubt that the property, real or personal, of a non-resident decedent, situated or within the jurisdiction of this State at the time of his death, may be administered under our insolvent laws, and this although the estate of the decedent may be solvent at the place of his domicile. 1 Cold., 581. Indeed, this is not questioned, but the bill is resisted on other grounds. It is said that the executors had full right to sell the land to Diemer, and that they did

sell it for more than a full price, in discharge of bona fide debts due from their testator. And that to set aside this conveyance to Diemer, would operate greatly to the prejudice of the estate of Robertson. And the complainant, it is said, having stood by for two years after the sale, is in no attitude to ask the aid of a Court of Chancery to set aside a conveyance made with his knowledge and approbation. While it is true that there is not the least ground to impute fraud or intentional misconduct, either to the executors or creditors of Robertson's estate, or to doubt that the sale to Diemer was made with the intention of discharging the first debts of the estate, we do not think, on the other hand, that the complainant has done any thing to repel him. The statement that he knew of and approved this sale to Diemer, ·at and before the deed was made, is made in the answers, but not sustained by any proof. Nor is it responsive to any allegation in the bill, and even if it were taken to be true, we are not satisfied that it would estop him.

One thing is very apparent, that when the defendants made this sale and purchase, they knew that the estate of Robertson, situated in Tennessee, was insolvent, and they further knew that the executors were applying the whole of the estate, so situated in Tennessee, to the discharge of other debts to the exclusion of complainant. Now when Robertson's executor and executrix took out letters of administration from a Court of Tennessee, we think they were

bound to administer the effects within the jurisdiction of the State according to its laws, although they were also clothed with power of administering the general estate by the Courts of their testator's domicile. And if so, it was their duty to administer it under the insolvent laws, without reference to the solvency or insolvency of the general estate.

It is true that, in the case of *Gilchrist* v. *Cannon*, already referred to as establishing the applicability of the insolvent laws to a case like this, a creditor administered in our forum, while in the case in hand the executor and executrix of the domicile are the personal representatives, but this can make no difference when the reason of the doctrine is considered. It is an admitted principle of international law that every State has the right to control and dispose of property actually within its jurisdiction; and it is the duty of every State to protect the rights of its own citizens and to aid them in the recovery of their just debts, without the necessity of resorting for satisfaction to the distant forum of the original administration. 1 Cold., 587. And such the Court determined was the reason and policy of the insolvent laws then in force, and which are substantially brought forward in the Code.

It was then the positive duty of the executor and executrix in this case, knowing as they did the insolvency of their testator's estate in Tennessee, to make suggestion of the fact to the County Court and notify all the creditors to bring for-

ward their claims, the object of these laws being to distribute insolvent estates ratably among the creditors. It is true that the complainant as creditor might have made the suggestion of insolvency, but then he would do so at the hazard of incurring a bill of costs if the estate proved solvent. Besides, the insolvent laws contain a positive inhibition against the payment of any debt by the administrator or executor within six months from the grant of his letters, under the penalty of being liable to each and every creditor for his ratable share of the insolvent's estate. Now in this case it appears from the decree, if admissible to look to it for that purpose, that all the Tennessee assets were applied in payment of part of the debts within a month from the grant of the letters testamentary by the County Court of Lincoln. And if this be so, there is little reason to impute laches to the complainant for his failure to take steps before the sale.

Our conclusion is that it is the duty of this Court to see that this real estate be administered for the benefit of all the Tennessee creditors. Certainly the provisions of the insolvent laws in this case have not been observed in these proceedings. As already intimated, we think that the complainant should have made suggestion of the insolvency to the County Court as at least a proper preliminary to the filing of a bill.

It was irregular and improper in his Honor,

the Chancellor, to order a sale of the land before the creditors had been brought in and an account taken. Nor do we think that it is equitable either to set aside the sale to the defendant, Diemer, absolutely, or to require him and the other creditors to account *pro rata* to the complainant and other excluded creditors, for the land, at the nominal price of $14,297.24. And we direct that Diemer and the creditors that he represents be allowed to retain the land at its real cash value at the date of their purchase, by accounting to the complainant and other Tennessee creditors, if such appear, for their *pro rata* of such cash value. Should the defendant, however, fail to elect or retain the land, then it will be held by the Chancery Court of Lincoln County as assets to be administered. The devisees of this land are already before the Court, and if it is thought important to his interest the legatee, James Robertson Bonner, may be made a party. There is no intimation in this record that any assets other than this land, situated in Tennessee, have come to the hands of the administrator; but complainant is of course entitled to an account of them, if such there be.

The decree of the Chancellor will be modified, and the cause remanded, to be proceeded in in accordance with this opinion. The complainant will pay one-half of the costs in this Court, and the executor and executrix the remaining half. The costs of the Court below are not adjudged.